UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-3636(DSD/JJK)

Menasha Corporation and
Menasha Advantage,

       Plaintiffs,

v.                                        **ORDER**

Thermotech, Inc.,

       Defendant.

    Geoff D. Biegler, Esq., Thomas S. McClenahan, Esq. and Fish & Richardson, 60 South Sixth Street, Suite 3200, Minneapolis, MN 55402 and Victor C. Johnson, Esq. and Fish & Richardson, 1717 Main Street, Suite 5000, Dallas, TX 75201, counsel for plaintiffs.

    John R. Neve, Esq. and Neve Law, PLLC, 8500 Normandale Lake Boulevard, Suite 1080, Minneapolis, MN 55437, counsel for defendant.

This matter is before the court on the motion of defendant Thermotech, Inc.[1] ("Thermotech") to dismiss for failure to state a claim. After a review of the file, record and proceedings herein, and for the following reasons, the court grants Thermotech's motion.

**BACKGROUND**

This diversity action arises out of an October 2001 lease agreement between plaintiffs Menasha Corporation and Menasha

---

[1] Thermotech is a Minnesota corporation with its principal place of business in Hopkins, Minnesota. (Compl. ¶ 3.)

Advantage (collectively, "Menasha") and non-party Winthrop Resources Corporation ("Winthrop").[2] At the time, Menasha operated an injection-molding plant in Querétaro, Mexico through one of its divisions. (Compl. ¶ 8.) Pursuant to Lease Schedule No. 003R (the "Lease Schedule") to the Master Lease Agreement, Menasha agreed to lease injection-molding equipment (the "Equipment") from Winthrop at a rate of $16,672 per month for an eighty-four month term. (Id. ¶ 8, Ex. B.) The Lease Schedule included a purchase option that provided:

> At the end of the then applicable lease term, Lessee agrees that it shall not return the Equipment, but rather: (I) purchase the Equipment in its physical possession and on this Lease Schedule ... for the then determined mutually-agreed price not to exceed thirty (30%) of Lessor's original acquisition cost; or (ii) continue to [] lease the Equipment in its physical possession and on this Lease Schedule ... for the then determined mutually-agreed lease charge.

(Id. ¶ 9, Ex. B.) The Lease Schedule required that "[p]rior to the end of the applicable lease term, Lessee shall sign and deliver all documents necessary for the sale or lease extension of the Equipment or the lease will continue for another year at the then current rate." (Id.) On November 30, 2001, Menasha entered into a General Assignment and Assumption Agreement (the "Assignment

---

[2] Menasha Corporation is a Wisconsin corporation. (Compl. ¶ 1.) Menasha Advantage is a division of Menasha Global, LLC, a Wisconsin limited-liability company. (Id. ¶ 2.) Both companies are headquartered in Neenah, Wisconsin. (Id. ¶¶ 1-2.)

2

Agreement") with its wholly-owned subsidiary (the "Dropdown Entity") wherein the Dropdown Entity agreed to "irrevocably assume[] all of the obligations and liabilities of Menasha and its subsidiaries incurred by the Division [that operated the Equipment]." (Id. ¶¶ 10-11, Ex. C ¶ 1.2.)

In December 2003, Menasha sold the Dropdown Entity to Thermotech pursuant to a Stock Purchase Agreement. (Id. ¶ 12.) Thereafter, Menasha alleges that the Dropdown Entity continued to operate the plant in Mexico, possess the Equipment and make lease payments to Winthrop. (Id.) In December 2007, Thermotech allegedly entered into an Asset Purchase Agreement with the Dropdown Entity to purchase the Dropdown Entity's assets, including the Equipment. (Id. ¶ 13.) Menasha claims that Thermotech also assumed all remaining obligations under the Lease Schedule, and made monthly lease payments to Winthrop until September 2008. (Id.) In October 2008, Thermotech attempted to purchase the Equipment from Winthrop. (Id. ¶ 14.) After Thermotech and Winthrop failed to reach a purchase agreement, Thermotech unsuccessfully tried to return the Equipment to Winthrop. (Id. ¶ 15.)

On October 24, 2008, Thermotech commenced a lawsuit against Winthrop in Minnesota state court, seeking a declaratory judgment that the Lease Schedule had terminated and injunctive relief requiring Winthrop to accept return of the Equipment. (Id. ¶ 16.)

In response, Winthrop filed a third-party complaint against Menasha, alleging breach of the Master Lease Agreement and Lease Schedule. (Id.) Specifically, Winthrop claimed that Menasha never signed and delivered the documents necessary for the sale or lease extension of the Equipment, causing the Lease Schedule to renew, and that Menasha had failed to make payments during the new term. (Id.)

On September 18, 2009, the Honorable Robert A. Blaeser granted summary judgment in Winthrop's favor on its breach of contract claim, finding that the Lease Schedule had renewed through October 2009, and that Menasha owed Winthrop $150,048 in damages, including monthly lease payments from October 2008 through June 2009. (Id. ¶ 18.) Judge Blaeser also granted Thermotech's motion for a declaratory judgment, holding that "Thermotech is not liable to Winthrop under the Lease Agreement or Lease Schedule 003R." (Neve Aff. Ex. A at 6.) On October 30, 2009, Menasha and Winthrop reached a settlement agreement in the amount of $560,000. (Compl. ¶ 20.) On December 14, 2009, Menasha sent Thermotech a letter demanding reimbursement for the fees and costs it incurred while litigating Winthrop's claim. (Id. ¶ 21, Ex. F.) Thermotech refused. (Id. ¶ 22, Ex. G.) Menasha filed the instant action on December 21, 2009, asserting claims for breach of contract, contribution, indemnity and unjust enrichment. The court now considers Thermotech's January 21, 2010, motion to dismiss.

4

**DISCUSSION**

**I.   Rule 12(b)(6) Standard**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (quotations and citation omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In this case, the parties agree that the court may consider Judge Blaeser's September 2009

order and the December 2003 Stock Purchase Agreement without converting this motion to one for summary judgment.

## II. Breach of Contract

Menasha first claims that Thermotech breached the Asset Purchase Agreement by failing to make monthly lease payments after September 2008 and failing to purchase the Equipment. Menasha acknowledges that it is not a party to the Asset Purchase Agreement, but asserts that it may enforce the agreement as an intended third-party beneficiary.

Under Minnesota law, a stranger to a contract generally acquires no rights under the contract. Hickman v. SAFECO Ins. Co. of Am., 695 N.W.2d 365, 369 (Minn. 2005) (citation omitted). However, "an exception exists if a third party is an intended beneficiary of the contract." Id. A party is an intended third-party beneficiary if its right to performance effectuates the intent of the contracting parties and "'(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" Dayton Dev. Co. v. Gilman Fin. Servs., Inc., 419 F.3d 852, 855 (8th Cir. 2005) (quoting Restatement (Second) of Contracts § 302 (1979)); Hickman, 695 N.W.2d at 369.

**A.  Duty Owed Test**

Under the "duty owed" test of subparagraph (a), "'the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee.'" Dayton Dev. Co., 419 F.3d at 855-56 (quoting Cretex Cos., Inc. v. Constr. Leaders, Inc., 342 N.W.2d 135, 138 (Minn. 1984)).  Menasha claims that Thermotech's performance under the Asset Purchase Agreement would have discharged the Dropdown Entity's duty to Menasha to perform the remaining obligations under the Lease Schedule.  Thermotech disagrees, and argues that the Dropdown Entity did not owe Menasha any duty because Menasha released it from all contractual obligations and liabilities in the December 2003 Stock Purchase Agreement.  Indeed, paragraph 7.8 of the Stock Purchase Agreement provides that, "[e]xcept as otherwise consented to or designated by [Thermotech] and except for purchase orders and sale orders in the Ordinary Course of Business, all Contractual Obligations between [the Dropdown Entity] and [Menasha] or its Affiliates will have been terminated with no further liability."  (Neve Aff. Ex. B ¶ 7.8.)  Additionally, paragraph 6.17 states:

> Transfer Agreement Indemnity.  Effective as of the Effective Time, any obligation or liability of [the Dropdown Entity] to indemnify [Menasha] or any Affiliate of [Menasha] ... pursuant to the Transfer Agreement described in Section 4.26 of this Agreement, or pursuant to any other agreement or document executed by [the Dropdown Entity] at the request of [Menasha] pursuant to Sections 4.1 or 4.4 of the Transfer Agreement,

7

>       is terminated without liability or obligation
>       to [the Dropdown Entity].

(Id. Ex. B ¶ 6.17 (emphasis in original).) These provisions establish that Menasha released the Dropdown Entity of any duties or liabilities it owed Menasha in December 2003.

In response, Menasha notes that the Dropdown Entity "irrevocably assumed" Menasha's obligations and liabilities under the Lease Schedule pursuant to the November 30, 2001, Assignment Agreement. Menasha argues that the Stock Purchase Agreement did not release the Dropdown Entity's assumption of liability. The court disagrees. The Stock Purchase Agreement was executed two years after the Assignment Agreement. To the extent that these documents contain inconsistent terms, the latter agreement controls. See Syverson v. FirePond, Inc., 383 F.3d 745, 750 (8th Cir. 2004). The Stock Purchase Agreement discharged all obligations owed by the Dropdown Entity to Menasha. Menasha sets forth no other facts to support its assertion that the Dropdown Entity owed it a duty or that Thermotech's performance under the Asset Purchase Agreement would have discharged that duty. Accordingly, Menasha cannot establish that it is an intended third-party beneficiary under the duty owed test.

   B.  **Intent to Benefit Test**

Menasha's claim also fails under subparagraph (b) or the "intent to benefit" test. Under this test, "'the contract must express some intent by the parties to benefit the third party

through contractual performance[.]'" Dayton Dev. Co., 419 F.3d at 856 (quoting Cretex Cos., 342 N.W.2d at 138) (alteration in original). In ascertaining the contracting parties' intent to benefit a third party, the court reads the contract "in light of all the surrounding circumstances." Hickman, 695 N.W.2d at 370. Menasha alleges that Thermotech and the Dropdown Entity expressed an intent to benefit Menasha in the Asset Purchase Agreement because Thermotech's performance would have fulfilled Menasha's contractual obligations under the Lease Schedule. Menasha, however, has pleaded no facts in support of this assertion. As a result, Menasha's claim is purely speculative, and the court cannot reasonably infer that Thermotech and the Dropdown Entity intended to benefit Menasha.

Accordingly, because Menasha has not satisfied the duty owed or intent to benefit test, Menasha cannot establish that it is an intended third-party beneficiary of the Asset Purchase Agreement. Consequently, Menasha's breach of contract claim fails, and the court grants Thermotech's motion to dismiss this claim.

**III. Contribution and Indemnity**

Menasha next seeks contribution or indemnity from Thermotech for the attorneys' fees and costs of defending and settling Winthrop's breach of contract claim. "Contribution is an equitable doctrine that requires that persons under a common burden share that burden equitably." Nuessmeier Elec., Inc. v. Weiss Mfg. Co.,

632 N.W.2d 248, 251 (Minn. Ct. App. 2001) (citation and internal quotation marks omitted). Contribution requires proof of "(1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability." Id. (citation omitted). Common liability "arises when both parties are liable to the injured party for part or all of the same damages." Id.

For Menasha to succeed on this claim, it must prove that Thermotech was liable to Winthrop for breach of the Master Lease Agreement and Lease Schedule. Thermotech, however, was not a party to the Master Lease Agreement or Lease Schedule and, therefore, cannot be liable to Winthrop under these contracts. See Hickman, 695 N.W.2d at 369. Judge Blaeser recognized this fact when he granted Thermotech's motion for declaratory judgment, holding that "Thermotech has no rights under or privity of contract in the [Master] Lease Agreement or Lease Schedule 003R.... Accordingly, Thermotech is not liable to Winthrop." (Neve Aff. Ex. A at 6.) Therefore, Menasha cannot establish that common liability exists between the parties, and dismissal of this claim is warranted.

Unlike contribution, indemnity does not require common liability. Blomgren v. Marshall Mgmt. Servs., Inc., 483 N.W.2d 504, 506 (Minn. Ct. App. 1992). Instead, indemnity "arises out of a contractual relationship, either express or implied by law, which requires one party to reimburse the other entirely." Id. (citation

and internal quotation marks omitted).  In situations as here, where there is no express contract between the parties concerning indemnification, a party may recover in the following instances:

> (1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
>
> (2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.
>
> (3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

See id. (citation omitted).  To recover in these circumstances, the party seeking indemnity must show it was without fault in incurring the liability.  See Engvall v. Soo Line R.R. Co., 632 N.W.2d 560, 572 (Minn. 2001); Tolbert v. Gerber Indus., Inc., 255 N.W.2d 362, 366 & n.2 (Minn. 1977).

Menasha argues that it should be indemnified based on the first instance.  According to Menasha, its liability to Winthrop was derivative because Thermotech assumed the obligations of the Lease Schedule, including the responsibility to make payments.  As previously stated, however, Judge Blaeser found no liability on Thermotech's behalf, and instead held Menasha liable for breach of the Master Lease Agreement and Lease Schedule.  Therefore, Menasha cannot prove that its liability was derivative.  Additionally,

11

Menasha has pleaded no facts indicating that it was without fault in incurring the liability. For these reasons, the court grants Thermotech's motion with respect to Menasha's indemnity claim.

**IV. Unjust Enrichment**

Lastly, Menasha alleges that Thermotech was unjustly enriched by its possession of the Equipment after September 2008 and by Menasha's defense and settlement of Winthrop's breach of contract claim. An unjust enrichment claim requires proof of three elements, "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." Dahl v. R.J. Reynolds Tobacco Co., 742 N.W.2d 186, 195 (Minn. Ct. App. 2007) (citation omitted).

With respect to its possession of the Equipment, Thermotech argues that it has neither appreciated nor accepted a benefit because it does not want the Equipment. Indeed, the information before the court indicates that Thermotech commenced the state court lawsuit to force Winthrop to accept return of the equipment. (Compl. ¶ 16; Neve Aff. Ex. A.) Menasha has pleaded no facts showing that Thermotech's retention of the Equipment has conferred a benefit that Thermotech has knowingly appreciated and accepted. Accordingly, Menasha cannot prove an unjust enrichment claim against Thermotech on this basis.

Next, Menasha argues that its litigation of Winthrop's claim benefitted Thermotech by discharging it from liability under the Lease Schedule. This argument fails. As previously stated, Thermotech was not liable to Winthrop under the Master Lease Agreement or Lease Schedule. Therefore, Menasha's litigation did not relieve Thermotech of liability. Alternatively, Menasha contends that its settlement and defense of Winthrop's claim caused Winthrop to abandon an unjust enrichment claim it asserted against Thermotech in the state action. The information before the court, however, indicates that Winthrop's unjust enrichment claim against Thermotech is still pending. (Neve Aff. Ex. A at 6.) Accordingly, the court determines that Menasha has not pleaded facts sufficient to state an unjust enrichment claim and dismissal is warranted.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that Thermotech's motion to dismiss [Doc. No. 10] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 17, 2010

s/David S. Doty
David S. Doty, Judge
United States District Court